UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11678-RWZ

DIAHANN L. GROSS

v.

SUN LIFE ASSURANCE COMPANY OF CANADA

MEMORANDUM OF DECISION

May 21, 2015

ZOBEL, D.J.

The plaintiff in this ERISA action, Diahann Gross, seeks attorneys' fees and costs following her successful appeal of this court's summary judgment rulings. The First Circuit, which first heard plaintiff's fee petition, determined that she is entitled to some fees and costs from defendant Sun Life Assurance Company of Canada ("Sun Life"), but it remanded to this court for calculation of those amounts. See Gross v. Sun Life Assurance Co. of Can., 763 F.3d 73, 82 (1st Cir. 2014). Having considered the parties' filings and completed a detailed analysis of the submitted billing records, the court will allow fees and costs, but at a level substantially below the amounts requested.

**I.   Background**

Both this court and the First Circuit have recounted the facts of this case at length, so I will discuss only the relevant details here. See, e.g., Gross v. Sun Life Assurance Co. of Can., 734 F.3d 1, 4-5 (1st Cir. 2013); Gross v. Sun Life Assurance

Co. of Can., No. 09-cv-11678-RWZ, 2012 WL 29061, at *1-3 (D. Mass. Jan. 6, 2012) (Docket # 52).

Plaintiff is an optician and office manager at an eye clinic in Lexington, Kentucky. After complaining of several ailments, which were later substantiated by a doctor's report, plaintiff was placed on leave in August 2006. Plaintiff is covered by a long-term disability policy that her employer obtained, indirectly, from defendant Sun Life. She filed a claim seeking long-term disability benefits, but it was denied based on "insufficient objective evidence to substantiate" a disability that precluded her from working. Plaintiff filed an administrative appeal of that decision, but it was denied.

On January 21, 2009, plaintiff sued Sun Life in Kentucky state court challenging the denial of benefits on state-law grounds. A month later, Sun Life removed that action to the United States District Court for the Western District of Kentucky and moved to dismiss the complaint. After an adverse (but not dispositive) ruling on that motion, plaintiff voluntarily dismissed the Kentucky case on September 8, 2009.

Plaintiff then sought refuge in the courts of a second commonwealth, filing a complaint alleging similar state law violations in Norfolk Superior Court the same day she dismissed the Kentucky case.[1] Sun Life again removed the state-court complaint, landing it in this court. Sun Life again moved to dismiss, contending that the state claims were preempted by ERISA. I allowed that motion but permitted plaintiff to file an amended complaint. On March 12, 2010, plaintiff did that, again asserting the same

---

[1] Sun Life's principal United States place of business is in Massachusetts.

five state-law claims that both the Kentucky court and I had dismissed, but adding two ERISA claims. On Sun Life's motion, I again dismissed the five state-law claims.

Discovery ensued, accompanied by two unsuccessful discovery motions by plaintiff. Then, in February 2011, plaintiff moved the court to apply a de novo standard of review to the evaluation of her ERISA claims. I denied that motion, so the parties filed cross-motions for summary judgment. In those motions, plaintiff contended that her plan was exempt from ERISA under the regulatory safe harbor exception, see, e.g., 29 C.F.R. § 2510.3-1(j); Johnson v. Watts Regulator Co., 63 F.3d 1129, 1131-32 (1st Cir. 1995), and that, even if the plan was not exempt, Sun Life's denial of plaintiff's benefit request was arbitrary and capricious (applying the standard of review that I set in denying her previous motion). I denied plaintiff's summary judgment motion and allowed Sun Life's.

Plaintiff appealed, contending that the court erred by finding the safe harbor inapplicable, the standard of review to be arbitrary and capricious, and defendant's actions insufficient to meet the arbitrary and capricious standard. The First Circuit affirmed on the safe harbor issue, but reversed on the standard of review. Although the First Circuit concluded that each party should bear its own costs for the appeal, plaintiff moved for costs and fees in the First Circuit. A split panel, acting on the fee petition (and not directly addressing costs), concluded that plaintiff is entitled to some fees on the issues on which she has been successful and remanded to this court for determination of the fee award.

**II.     Discussion**

Civil litigants generally must bear their own costs and pay their own counsel, but Congress has altered that background rule for ERISA cases. ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has interpreted this provision to mean that an award of fees and costs is appropriate where a claimant shows "some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 253 (2010), as the First Circuit has determined that plaintiff has done in this case. Gross, 763 F.3d at 82.

### A. Attorneys' Fees

Calculation of fee awards generally follows the lodestar approach, and the First Circuit has instructed this court to apply that methodology here. Gross, 763 F.3d at 86. The lodestar approach begins by finding "[t]he product of the hours reasonably worked times the reasonable hourly rate(s)." Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014). Reasonableness is the touchstone of this calculation. Reasonable fees are the "prevailing rates in the community [of the court] for comparably qualified attorneys." United States v. Metropolitan Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988). Likewise, reasonable hours are the hours "actually spent on the case," Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992), not including "hours that are excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Once the threshold lodestar is set, "[n]umerous factors . . . may support upward or downward

4

adjustments" from it. Gross, 763 F.3d at 86. For example, if the plaintiff failed to prevail on claims unrelated to those on which the plaintiff succeeded, it may be appropriate to adjust the lodestar downward. Hensley, 461 U.S. at 434-35. Likewise, a downward adjustment may be necessary if the lodestar is disproportionately larger than the level of success achieved by the plaintiff. Id.

    **1.    Rates**

Plaintiff has been represented by two able counsel throughout this matter: Michael Grabhorn, a Louisville, Kentucky-based ERISA lawyer who has worked with plaintiff from the start of her Kentucky state-court action, and Jonathan Feigenbaum, a Boston-based ERISA lawyer who got involved shortly before plaintiff filed her Massachusetts state-court complaint. Both of them seek to recover fees at a rate of $500 per hour.

With respect to Feigenbaum, $500 per hour is reasonable. Feigenbaum was first admitted to practice in 1985 and has decades of experience in ERISA litigation. He is based in Boston, where hourly legal fees are among the highest in the country. This court has previously approved similar fee awards to Feigenbaum. See, e.g., Merigan v. Liberty Life Assur. Co. of Boston, 839 F. Supp. 2d 445, 447 (D. Mass. 2012) (finding $485 per hour rate reasonable).

The requested $500 per hour rate is excessive for Grabhorn because he has less experience than Feigenbaum and because it is likely above Grabhorn's normal hourly rate. First, Grabhorn has practiced law for 13 years, which is nearly two decades less than Feigenbaum. Although both Grabhorn and Feigenbaum are able

5

practitioners, the disparity in their experience suggests that a slightly lower rate is appropriate for Grabhorn.  Second, Grabhorn's practice is based in Louisville, Kentucky, while Feigenbaum's is based in Boston.  Prevailing rates for legal services are substantially lower in Louisville than in Boston.  Compare Brandon Gee, The Going Rate(s): 2013 "Real Rate Report" Reveals Who's Charging What in the Legal Community, Mass. Lawyers Weekly, Oct. 11, 2013, available at http://masslawyersweekly.com/2013/10/11/the-going-rates/ (reporting average Boston partner rate of $598.69 per hour), with Andy Brownfield, Chart of the Day: Here's How Cincinnati's Legal Rates Stack Up, Cincinnati Business Courier, Sept. 26, 2014, available at http://www.bizjournals.com/cincinnati/blog/2014/09/chart-of-the-day-here-s-how-cincinnati-s-legal.html (reporting, based on same methodology, average Louisville partner rate of $324.95 per hour). Grabhorn's out-of-state status does not, in itself, weigh in favor of reducing his fee request, but his standard billing practices and the expectations of his client do.  From Grabhorn's declaration, which cites only cases from the Western District of Kentucky (or the Sixth Circuit), it appears that his practice is focused in the Louisville region, where he has recently received fee awards at a rate of $350 per hour.  See, e.g., Thies v. Life Ins. Co. of N. Am., 839 F. Supp. 2d 886 (W.D. Ky. 2012); Mullins v. Prudential Ins. Co. of Am., No. 3:09-cv-371-S, 2012 U.S. Dist. LEXIS 43723 (W.D. Ky. Mar. 29, 2012).  Although Grabhorn's declaration is silent on his standard hourly rate, the court

infers from these past fee awards that it is around $350.[2]  That is likely close to the rate that plaintiff intended to pay Grabhorn when he was first engaged.  Taken together, all of these factors support a downward adjustment of Grabhorn's requested rate to $375 per hour.

Finally, plaintiff seeks compensation for work done by Grabhorn's paralegal at a rate of $110 per hour.  That, too, is excessive.  Courts in this district have generally capped paralegal rates at $90 to $100 per hour.  See, e.g., Int'l Union of Operating Eng'rs, Local 98 Health & Welfare, Pension & Annuity Funds v. Ray Haluch Gravel Co., 792 F. Supp. 2d 139, 140-41 (D. Mass. 2011) (reducing paralegal rate to $100 per hour); In re Neurontin Prods. Liability Litig., No. 04-cv-10981-PBS, 2011 WL 1326407, at *7 (D. Mass. Apr. 5, 2011) (capping paralegal rate at $100 per hour); Ferraro v. Kelley, No. 08-cv-11065-DPW, 2011 WL 576074, at *6 (D. Mass. Feb. 8, 2011) (approving proposed rate of $90 per hour for paralegal work and declining defendants' invitation to reduce rate to $60 per hour).  Because the paralegal in this case was based in Louisville, where costs are lower than in Boston, a more reasonable rate is $90 per hour.

### 2.  Hours Billed

Plaintiff's two attorneys and paralegal have collectively billed 556.55 hours for the litigation of this relatively uncomplicated case.  A substantial reduction of this claim is necessary to set the threshold lodestar figure at a reasonable level.  The court has

---

[2] Indeed, in a sworn August 2011 filing with the U.S. District Court for the Western District of Kentucky, Grabhorn declared "My current hourly rate charged to and paid by clients is $350.  This has been my hourly rate since January 2010."  Affidavit of Michael D. Grabhorn, Docket # 83-1, Thies v. Life Ins. Co. of N. Am., No. 5:09-cv-98-TBR (W.D. Ky. filed Aug. 29, 2011).

conducted a line-by-line review of the billing records submitted with plaintiff's attorney declarations and identified several categories of entries that require reduction.

First, plaintiff seeks compensation for 36.1 hours spent preparing the appendix for appeal.[2] This is excessive for a case that has had limited discovery and is based almost entirely on an administrative record. That this straightforward task was divided between two lawyers could only have exacerbated the inefficiencies. This task could have reasonably been completed in a third of the time billed by plaintiff's attorneys, so only that amount will be included in the lodestar.

Second, plaintiff seeks fees for fourteen hours of Grabhorn's time spent arguing the appeal (and presumably traveling to and from Boston) and 1.5 hours of Feigenbaum's time for attending the argument. This too is unreasonable. Only one attorney was necessary for the argument, so plaintiff is not entitled to fees for Feigenbaum's attendance. Although compensation for time spent traveling to and from an argument may be appropriate in some circumstances, it is not here because Feigenbaum, who actively participated in preparing the appeal, could have done the argument without the need for travel. A reasonable client, paying her own bills, would have insisted upon it. Plaintiff is therefore entitled to only 1.5 hours of fees for Grabhorn's time spent arguing the appeal.[3]

Third, plaintiff seeks fees for 67.3 hours spent preparing her fee petition.[4] A fee petition in an ERISA case should be a straightforward exercise, particularly for

---

[2] 10.2 hours by Feigenbaum and 25.9 by Grabhorn.
[3] There is no indication in the time records submitted to the court that Grabhorn did any preparation for the appeal or other work on the case during the 14-hour period.
[4] 37.6 by Feigenbaum, 27.7 by Grabhorn, and 2 by Grabhorn's paralegal.

experienced ERISA practitioners like plaintiff's counsel. The charged time is therefore excessive. The fee petition, including both the opening and reply briefs, could have reasonably been completed in a third of the time billed by plaintiff's counsel. The court will include only 22.4 hours for fee petition work in the lodestar.

Finally, two aberrations in the billing records seem erroneous and must be excluded from the lodestar. Feigenbaum reports a five-hour telephone conference with Grabhorn on October 6, 2010, regarding a scheduling order. Grabhorn, however, has no time entry at all on that day. Because of both the incongruence in the bills and the implausibility of a five-hour call about a scheduling order, the court concludes that this entry was in error. Similarly, Grabhorn reports a 1.3-hour charge on September 16, 2009, to "edit and finalize draft complaint to be filed in Mass[achusetts]." Plaintiff's Massachusetts complaint was filed eight days before that, so it is not clear why this task was necessary. The court therefore excludes it from the lodestar.

### 3. Adjustments

With the reductions discussed in the last section, the threshold lodestar contains 149.35 hours from Feigenbaum, 306.4 hours from Grabhorn, and 54.2 hours from Grabhorn's paralegal. The court's analysis, however, does not end here. A reasonable fee award also "takes into account the quality of the results that the plaintiff obtained." De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009). The court therefore must adjust the threshold lodestar to remove time spent pursuing unsuccessful claims and to reflect the quality of plaintiff's victories.

Plaintiff seeks fees for time spent on several unsuccessful actions and motions,

including work on the Kentucky case, the deficient first complaint in this case, the motion to remand, and several discovery motions. Because plaintiff did not achieve any form of success on those matters, plaintiff may not recover fees for that work.

First, plaintiff requests fees for 22.8 hours that Grabhorn and his paralegal spent working on this matter between May 2008 and August 2009. This work was done during the pendency of the Western District of Kentucky case and even included tasks specific to that case, like drafting that complaint. The Western District of Kentucky case was voluntarily dismissed after it became clear that ERISA would likely control the outcome of the dispute, and plaintiff re-filed her complaint (still in a deficient form) here. Because plaintiff was not successful in either the Kentucky action or any of the claims asserted in it, plaintiff cannot recover fees for time spent on that work.[5]

Next, plaintiff seeks fees for 80.05 hours spent on the Massachusetts cases (both this case and the state court action) between September 2009 and March 2010.[6] This includes time spent pursuing an unsuccessful motion to remand and opposing a successful motion to dismiss. See Docket ## 3, 7. Because plaintiff's originally filed complaint failed to state a claim upon which relief could be granted and because plaintiff's motion to remand was improper, plaintiff cannot recover fees for time spent on those tasks.

After this court's order on the motion to dismiss, plaintiff's counsel billed a total of 18.1 hours for the preparation of the operative complaint in this case (i.e., the First

---

[5] The court recognizes that some of the pre-suit investigation work done during this period may have been necessary for the later-filed First Amended Complaint, but Grabhorn's time entries are not detailed enough to parse out the acceptable investigation charges from the charges related to the Kentucky case.
[6] 43.45 hours by Feigenbaum, 34.8 by Grabhorn, and 1.8 by Grabhorn's paralegal.

Amended Complaint, Docket # 17).[7] That complaint included seven claims, five of which had been previously dismissed by either this court or the Western District of Kentucky and were denied again in my order on plaintiff's second motion to dismiss (Docket # 23). Plaintiff was not successful on those repetitive claims and cannot recover fees for time spent pursuing them. The court therefore reduces plaintiff's requested fees for time spent on the First Amended Complaint by five-sevenths (i.e., plaintiff may only recover fees for 28.6% of this time). Likewise, plaintiff cannot recover fees for the 14.4 hours spent opposing the second motion to dismiss, which I allowed to again rid this case of plaintiff's state law claims.[8]

Finally, plaintiff seeks fees for 16.85 hours that her counsel spent on discovery motions.[9] Specifically, plaintiff moved to supplement the record for judicial review (Docket # 27) and for limited discovery (Docket # 28). The court denied both motions. See Docket # 34. Accordingly, plaintiff cannot recover fees for work done on these matters.

For the remaining major issues in this case—the motion to determine the standard of review, the motions for summary judgment, and the appeal—plaintiff achieved mixed results and is therefore entitled to fees for at least part of the charged time. The standard of review motion, which was the key ruling that plaintiff successfully appealed, required 21.05 hours of work.[10] That amount is reasonable, considering the length of the motion and the research required. The cross-motions for summary

---

[7] 1.8 hours by Feigenbaum, 15.5 by Grabhorn, and 0.8 by Grabhorn's paralegal.
[8] 8.1 hours by Feigenbaum, 6 by Grabhorn, and 0.8 by Grabhorn's paralegal.
[9] 8.95 hours by Feigenbaum, 6.7 by Grabhorn, and 1.2 by Grabhorn's paralegal.
[10] 6.55 hours by Feigenbaum, 13.8 by Grabhorn, and 0.7 by Grabhorn's paralegal.

judgment, however, are a different story.  Plaintiff requests fees for 105.4 hours of attorney time spent on these motions.[11]  In a relatively straightforward case like this one, that is unreasonable.  Much of the excess time appears to have been spent on plaintiff's alternative arguments, many of which were not successful.  The court is mindful, however, that plaintiff needed to seek summary judgment to get to a final order from which it could appeal the standard of review ruling.  To some extent, the need to reach an appealable order weighs in favor of awarding fees for time spent on the otherwise unsuccessful summary judgment motions.  Taking all of these factors into account, the court concludes that a 50% downward adjustment of the time spent on summary judgment work is reasonable.

As for the appeal itself (i.e., research, briefing, preparation for argument, and related post-argument work), plaintiff seeks fees for 162.4 hours.[12]  The appeal raised three issues: whether the ERISA safe harbor exception applied; if not, what standard of review governed plaintiff's ERISA claim; and, under that standard, whether she was entitled to relief.  See Gross, 734 F.3d at 3 (1st Cir. 2013).  Plaintiff lost on the first issue, prevailed on the second, and won a reversal and remand on the third.  In light of this mixed outcome, it is not reasonable to award plaintiff fees for all time that her attorneys spent working on the appeal.  Instead, the lodestar must be adjusted downward by 33% to account for plaintiff's failure to succeed on the safe harbor issue.

    **4.**    **Summary**

---

[11] 15.6 hours by Feigenbaum, 84.3 by Grabhorn, and 5.5 by Grabhorn's paralegal.
[12] 37.5 hours by Feigenbaum, 92.0 by Grabhorn, and 32.9 by Grabhorn's paralegal.

The court finds that the following time spent on legal services related to the issues on which plaintiff has prevailed are reasonable: 67.3 hours of Feigenbaum's services, 160.1 hours of Grabhorn's services, and 28.4 hours of Grabhorn's paralegal's services. Plaintiff has also shown that reasonable fees for these services are $500/hour, $375/hour, and $90/hour, respectively. Defendant shall therefore pay plaintiff's attorneys fees in the amount of $96,243.50.

**B.     Costs**

Plaintiff also seeks to recover $4,439.81 in costs,[13] split between her two attorneys. Because many of these costs are improper, excessive, or unsupported by descriptions, the court finds that plaintiff may only recover a small fraction of them.

First, many of plaintiff's requested costs relate to the First Circuit appeal, including filing fees, brief preparation, and travel costs (specifically, $993.98 from Grabhorn for travel[14] and $1,131.46 from Feigenbaum for the remainder). The First Circuit, however, ordered "[e]ach party to bear its own costs" in its opinion resolving the appeal. Gross, 734 F.3d at 28. Plaintiff therefore may not recover these costs.

Second, plaintiff seeks $1,835.97 for postage and print/copy costs. That amount is grossly excessive for this straightforward case. Assuming a standard $0.05 per page rate, plaintiff's copying charges equate to nearly seven full boxes of paper. But the administrative record, which forms the bulk of the factual record in this case, is

---

[13] Feigenbaum claims $1,136.46, but the itemized costs in his declaration only add up to $1,131.46. Likewise, Grabhorn claims a total of $3,020.35, but the itemized costs in his declaration only add up to $3,000.35. The court assumes that plaintiff intended to request these lower amounts. But, to the extent that assumption is incorrect, the court denies the additional $25.00 as unsupported by the motion.
[14] Although Grabhorn's itemized list of costs is devoid of details like dates or reason for travel, it appears that the only travel that he did for this case was the First Circuit oral argument.

available (and was filed in this court) in electronic form, like all other filings. Plaintiff offers no explanation of why so much material needed to be printed. Likewise, plaintiff offers no explanation of what needed to be mailed in this case, and the court, on its own, cannot see any reason for hundreds of dollars in postage charges. Although the record is not sufficient for a case-by-case analysis of printing and postage costs, a two-thirds reduction in plaintiff's requested amount is reasonable.

Finally, plaintiff seeks $170.40 in "e-scan documents." The court does not know what this means, let alone why plaintiff needed them. Plaintiff therefore has not carried her burden of justifying this cost.

Only plaintiff's requests for district court filing fees and service fees are allowed in full, along with the reduced postage and print/copy fees discussed above. Sun Life shall therefore pay $766.99 in costs, with $308.00 to Feigenbaum and $458.99 to Grabhorn.

### III.   Conclusion

Plaintiff's Motion for Attorneys' Fees (Docket # 71) is ALLOWED IN PART and DENIED IN PART. Defendant is ordered to pay to the plaintiff attorneys' fees in the amount of $96,243.50 (allocated as $33,650.00 for Feigenbaum, $60,037.50 for Grabhorn, and $2,556.00 for Grabhorn's paralegal), and costs in the amount of $766.99 (allocated as $308.00 to Feigenbaum and $458.99 to Grabhorn). Plaintiff's motion for leave to file a reply in support of her motion for attorneys' fees (Docket # 77) is DENIED AS MOOT.

Defendant also seeks to supplement the administrative record on remand with

recent correspondence between a physician who performed an independent medical evaluation of plaintiff and one of plaintiff's attorneys. Supplementing the record at this stage is presumptively improper, and defendant has shown no reason to depart from that rule. See, e.g., Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005). The motion (Docket # 82) is DENIED.

The court has also considered the recent metabriefing (i.e., briefing about briefing) on defendant's motion to supplement the record on remand. Defendant's motion for leave to file a reply brief (Docket # 88) is ALLOWED and its motion to strike plaintiff's opposition to that motion (Docket # 92) is DENIED. The court will take the underlying motion under advisement once the reply brief is filed.

|         May 21, 2015         |         /s/Rya W. Zobel         |
|             DATE             |          RYA W. ZOBEL           |
|                              |    UNITED STATES DISTRICT JUDGE |