UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11678-RWZ

DIAHANN L. GROSS

v.

SUN LIFE ASSURANCE COMPANY OF CANADA

ORDER

June 28, 2018

ZOBEL, S.D.J.

All that remains of this protracted benefits litigation is Plaintiff's Motion for Interest, Attorneys' Fees and Costs (Docket # 143). Assuming familiarity with the facts, I address each issue below.

**A.    Prejudgment Interest**

On remand, the Court of Appeals has instructed consideration of dual objectives in awarding prejudgment interest: first, to make the plan participant whole, and second, to prevent unjust enrichment. See Gross v. Sun Life Assur. Co. of Canada, 880 F.3d 1, 19–20 (1st Cir. 2018). Plaintiff urges application of a 12% rate, citing her borrowing and opportunity costs, defendant's rate of return, and the rate set by Massachusetts statute. See Mass. Gen. Laws ch. 231, § 6C. Defendant maintains that the federal rate under 28 U.S.C. § 1961, which this court previously applied, remains appropriate, and argues that plaintiff has failed to meet her burden of proof in substantiating damages.

Balancing the equities requires a more generous rate than the federal rate I previously applied.  See Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st Cir. 1996) ("Because ERISA is inscrutable on the subject, a court that elects to award prejudgment interest in an ERISA case has broad discretion in choosing a rate.  In such a situation, equitable considerations should guide the exercise of judicial discretion"), abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242 (2010).  When the Cottrill court approved the federal rate over Rhode Island's 12% rate, it was 4.12%.  In contrast, at the time the instant complaint was filed in 2009, the federal rate was only 0.37%.  See Gross, 880 F.3d at 21.  This historically low rate does not adequately compensate plaintiff, especially "as it represents a completely risk-free rate of return."  Smith v. Jefferson Pilot Fin. Ins. Co., No. 07-10228-PBS, 2010 WL 818788, at *3 (D. Mass. Mar. 5, 2010).

The cost of making plaintiff whole is not entirely clear.  Although consideration of market-rate borrowing costs is certainly appropriate, plaintiff has not substantiated her claim of 12-14% borrowing rates.  The federal prime rate, "which better reflects the value of the unpaid money over time," id. (and cases cited), has averaged 3.37% since 2009.[1]  This rate admittedly fails to capture plaintiff's risk of default, which she does not quantify but has characterized as "high."  Docket # 109, at 16.  She also grounds her opportunity cost of missed investment in the return rate of the S & P 500 index, which purportedly averaged 9.8% returns during the relevant period.  Docket # 144, at 7.

---

[1]   Annual Federal Reserve data for "average majority prime rate charged by banks on short-term loans to business, quoted on an investment basis," available at https://www.federalreserve.gov/datadownload/Build.aspx?rel=H15.

The record is better established, if still incomplete, on the second relevant consideration: preventing unjust enrichment.  Plaintiff has submitted financial reports showing defendant's return on equity, but omits that information for 2009-2011.  See Docket # 144-4 (citing 9.5% ROE in 2012, 18.9% in 2013, 12.2% in 2014, 12.6% in 2015, 12.4% in 2016, and 12.8% through 2017's third quarter).  Although punitively high rates must be avoided, the Court of Appeals has clearly instructed that "[a]warding interest at a rate that does not recapture the lost value of the money during the period it was withheld would create a perverse incentive for a defendant to delay payments while it earned interest on those funds." Gross, 880 F.3d at 20 (citation omitted).

Given ERISA's silence on prejudgment interest rates, the Court of Appeals has endorsed judicial use of "outside sources, including state law, for guidance." Id. (quoting Cottrill, 100 F.3d at 224-25).  See Gallagher v. Park W. Bank and Trust Co., 951 F. Supp. 10, 14 (D. Mass.1997) ("This court will adopt the 12 percent rate of Mass. Gen. L. ch. 231, § 6C.  As plaintiffs have argued, it would be inequitable for a breach of an obligation to pay funds owed under a pension contract in Massachusetts to generate less interest than a breach of a simple contract.").  Though a Canadian corporation, defendant's principal United States place of business is in Massachusetts. "The state rate reflects the Massachusetts legislature's considered view of the likely rate of return on invested capital and the cost of borrowing money, under the particular economic conditions of this state." Radford Tr. v. First Unum Life Ins. Co. of Am., 321

F. Supp. 2d 226, 257–58 (D. Mass. 2004), rev'd in part, appeal dismissed in part, 491 F.3d 21 (1st Cir. 2007).[2]

Here, by aligning with defendant's uncontested earnings,[3] the state rate prevents unjust enrichment without amounting to punishment inconsistent with ERISA's compensatory scheme. Accordingly, prejudgment interest is awarded at 12% compounded annually for each monthly benefit and accruing through the date of defendant's final payment.

**B.      Attorney Grabhorn's Post-Remand Fees**

The Court of Appeals recognized plaintiff's eligibility for post-remand fees, Gross, 880 F.3d at 25, n. 30, and she now seeks reimbursement for 322.8 hours of Attorney Michael Grabhorn's time at $500 per hour, and 30.8 hours of attorney Andrew Grabhorn's time at $250 per hour. Defendant has already assented to attorney Jonathan Feigenbaum's fee request for 32.85 hours at $625 per hour, but opposes Michael Grabhorn's far greater request. As grounds, defendant argues not only that Grabhorn's request is unreasonably excessive, but also that his documented misconduct in this case demands that his fees be denied or reduced.

The lodestar approach "is the method of choice for calculating fee awards." Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015). Under that approach, a district court multiplies a reasonable hourly rate by the number of reasonably expended hours –

---

[2]     To the extent such a rate appears to constitute a windfall for plaintiff, a Kentucky resident, it bears noting that her home state's statutory rate was also 12% until 2017, when it was cut to 6%. Ky. Stat. § 360.040 (as amended June 29, 2017).

[3]     Defendant nowhere refutes the return rate figures offered by plaintiff, but merely argues that its earnings are irrelevant to the rate determination. Docket # 146. This position is without support. See, e.g., Gross, 880 F.3d at 21 (approving consideration of defendant's investment return rates).

excluding time deemed "excessive, redundant, or otherwise unnecessary." Id. The award may then be adjusted "based on factors not captured in the lodestar calculation." Id.

As to rate, that defendant agreed to a $125 per hour increase on Feigenbaum's request for reimbursement has no bearing on Grabhorn's entitlement to the same increase for nearly ten times as many hours. For the reasons upheld by the Court of Appeals, Gross, 880 F.3d at 23-24, $375 remains Grabhorn's reasonable hourly rate.

As to number of hours, it is not unreasonable that defendant's hours in the five years since the 2013 remand would approach the time he spent in the four years preceding it. Although the issues have recently narrowed significantly, the period in question nonetheless included another claim and review process followed by another lengthy appeal on an expanded record. Because plaintiff prevailed both before this court and the First Circuit, the time need not be reduced to reflect mixed results. Cf. De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009) (A reasonable fee award "takes into account the quality of results that the plaintiff obtained."). Accordingly, I decline defendant's invitation to eliminate as excessive categories including client communications and participation in mediation. One exception is six hours Grabhorn billed on June 1, 2018, for a response brief never filed. Those hours are eliminated.

Several other categories warrant reduction not because they are excessive, but because it would be inequitable to fully compensate Grabhorn for work the Court of Appeals has deemed "worthy of reproach." Gross, 880 F.3d at 19. Not for the first time, Grabhorn threatened an opposing party's witness in an effort to obtain an opinion more favorable to his client. Id. at 18. He then misrepresented the misconduct both at

summary judgment before this court and on appeal, attempting to make it appear more innocuous than in fact it had been.  Id. at 18-19 and n. 24 (appellate brief claimed that legal action was threatened to obtain plaintiff's medical records being withheld, rather than as part of a demand that the expert "correct" his medical opinions); Docket # 115, at 16-19 (same, at summary judgment).  Although Grabhorn had the good sense not to bill for the specific misconduct in question, he should not be fully rewarded for phases of the litigation infected by that misconduct and related misrepresentations.  Accordingly, the following time will be reduced by 25%: (1) 28.4[4] hours billed from November 2014 through February 2015, when Grabhorn sent the offending communications and focused his strategy on the medical opinions; (2) 19 hours spent from March 5, 2016 to April 18, 2016 responding to defendant's motion for summary judgment; and (3) 76.1 hours from October 5, 2016 to January 3, 2017 responding to defendant's brief on appeal.  In sum, Michael Grabhorn's compensable hours are reduced by 36.85[5] to 285.15, at $375 per hour, for a total award of $106,931.25.

Andrew Grabhorn's rate is uncontested, and his time is reasonable but for a 25% reduction on the 10.9 hours for his work on the appellate brief as above.  Defendant shall therefore pay his fees of $7,020 (28.08 hours[6] at $250 per hour).

---

[4]  This number represents the sum of Grabhorn's hours from 11/13/14 through 2/27/15, less any time billed for client communication, which I have not included in the time to be reduced.

[5]  Full request 322.8 – (6 for brief never filed) – (.25 * 28.4 remand hours) – (.25 * 19 summary judgment brief) – (.25 * 76.1 appellate brief)
    322.8 – (6 + 7.1 + 4.75 + 19)
    322 – 36.85
    285.15

[6]  Full request 30.8 hours – (.25 * 10.9)
    30.8 – 2.725
    28.075

**C.     Costs**

Plaintiff was awarded, and has since received, $703.72 in costs for her most recent appeal.  She now requests an additional $248.97 in post-remand postage and copy/print costs.  Although the copies are described as "pleadings for review, as well as correspondence," Docket # 144-2, at 2, the record permits no closer scrutiny.  Even assuming a rate of $0.10 per page, this request represents well over 2,000 copied pages.  Given the very few remaining issues at this stage, a one-half reduction in plaintiff's requested amount is reasonable.

**D.     Summary and Conclusion**

Consistent with the summary chart below, plaintiff's motion is allowed in part, and denied in part:

| Interest | Fees (M. Grabhorn) | Fees (A. Grabhorn) | Costs |
|---|---|---|---|
| 12% | $106,931.25 | $7,020 | $124.49 |

Following the entry of judgment, postjudgment interest will accrue at the federal rate.  28 U.S.C. § 1961(a).  The parties shall provide a recalculation of the benefits due and propose a form of judgment within two weeks.

|  |  |
|---|---|
| June 28, 2018 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |